IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GWENDOLYN A. WILLIAMS                                PLAINTIFF

V.                            NO. 4:07cv01095 JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff Gwendolyn A. Williams seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits and for supplemental security income (SSI) benefits. Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error and whether the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. §§ 405(g), 1383(c)(3); *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). For the reasons that follow, the Court[1] reverses the Commissioner's decision and remands the case for further administrative proceedings.

Plaintiff filed her claims for benefits on November 26, 2004, alleging she suffered from osteoarthritis, with pain in her hands, wrists, ankles, feet, right knee and lower back; and further alleging hearing loss and depression. She alleged an onset date of January 1, 2001. Additionally, she fell at work on February 9, 2005, which she says resulted in

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge (doc. 10).

cervical pain and greatly increased low back and leg pain.[2]  Plaintiff was born November 23, 1963, and has at least a high school education.  She has no history of past relevant work at the substantial gainful activity level, although she has worked part time (two hours per day) as a cafeteria monitor in a school district over a period of eleven years.[3]  An Administrative Law Judge (ALJ) held a hearing on December 28, 2006, which resulted in an opinion dated April 26, 2007, finding Plaintiff "not disabled."  That decision has become the final decision of the Commissioner.

In reaching his decision, the ALJ followed the five-step sequential process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, impliedly finding that her part-time work as a school cafeteria monitor did not amount to substantial gainful activity as defined by applicable regulations.

At step two, he found her osteoarthritis and low back pain were severe impairments within the meaning of the regulations.  He considered her hearing loss and depression to be non-severe and further determined that her depression was medically controlled.

At step three, the ALJ concluded that Plaintiff had no impairment or combination of impairments that met or medically equaled any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix I.

At step four, he made separate findings as to Plaintiff's Residual Functional Capacity (RFC) as to her condition before and after her fall at work on February 9, 2005.  For the relevant period prior to February 9, 2005, he found:

---

[2] That she fell is not in dispute.  It is medically documented and there is considerable medical evidence in the record detailing the course of treatment following the fall.

[3] There were periods, following her fall, that she was unable to perform even that job, but she apparently had returned to work.

> . . . she had the residual functional capacity to lift-carry and push-pull up to 20 pounds occasionally and 10 pounds frequently, with the ability to stand and/or walk at least 6 hours in an 8-hour workday and the ability to sit at least 2 hours in an 8-hour workday.  (Tr. 17.)

For this period, the ALJ concluded that Plaintiff retained the RFC for the full range of light work.  For the period following February 9, 2005, the ALJ found:

> . . . she had the residual functional capacity to lift-carry and push-pull up to a maximum of 10 pounds occasionally with the ability to sit at least 6 hours in an 8-hour workday and the ability to stand and/or walk at least 2 hours in an 8-hour workday.  (Tr. 20.)

For this post-fall period, the ALJ concluded that Plaintiff retained the RFC to perform the full range of sedentary work.  In reaching his conclusions as to Plaintiff's RFC, the ALJ analyzed her credibility, concluding that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely reliable.  Because Plaintiff had no past relevant work, the ALJ proceeded to step five.

At step five, the ALJ found that there were "jobs that exist in significant numbers in the local, regional and/or national economy that the claimant can perform."  (Tr. 22.)  To reach this conclusion, he did not obtain the testimony of a vocational expert (VE), but rather determined that a finding of "not disabled" was directed by Medical-Vocational Rule 202.20 for the period prior to February 9, 2005;[4] and that a finding of "not disabled" was directed by Medical-Vocational Rule 201.27 for the period following February 9, 2005.

Plaintiff contends first that the ALJ's credibility analysis is faulty and not supported by substantial evidence and second, that his RFC determination is not supported by

---

[4] The opinion states the date as February 9, 2002, but that must be a typographical error. (Tr. 22.)

substantial evidence. The Court recognizes that this was a difficult case, but agrees that the ALJ's credibility analysis is flawed, at least to the extent he found Plaintiff's pain to be so minimal that it would not significantly diminish Plaintiff's ability to perform a full range of sedentary work (for the post-fall period). The Court also agrees that the RFC findings, specifically that Plaintiff could stand/walk for six hours (pre-fall) and sit for six hours (post-fall) are not supported by substantial evidence. Also, because the record clearly shows Plaintiff suffers pain which would have more than a minimum effect on her ability to perform the full range of light and sedentary work, the Medical-Vocational Guidelines cannot be used to direct a finding of not disabled.

Because Plaintiff's RFC is essentially undetermined at this point and because, once it is determined, the Commissioner may be able to show that jobs exist which Plaintiff could perform despite her impairments, it would not be appropriate to order benefits at this point. The case will be remanded for further development of the record.

<u>Credibility Analysis</u>

The ALJ correctly noted the appropriate factors to be considered in analyzing a claimant's credibility. He also discussed the medical evidence at some length; pointed out that Plaintiff alleged a very early onset date, despite the lack of evidence showing disability from that date; and noted that she conceded in testimony she had not sought treatment for some of her alleged disabling impairments or that they were medically controlled. He also took into account the fact that she was able to work two hours per day as a cafeteria monitor.[5] While there is sufficient evidence in the record to justify discounting Plaintiff's complaints to some degree, the Court finds that there is not sufficient evidence to support

---

[5] He specifically mentions depression, hearing loss, hypertension and gastroesophageal reflux disease. (Tr. 18.)

the finding that after Plaintiff's fall on February 9, 2005, her pain was so slight that she could perform the full range of sedentary work.[6] The record is clear that she suffers from lower back and leg pain, a non-exertional impairment,[7] at a level which would significantly impair her ability to perform the full range of sedentary work as described in the regulations.

Following her fall at work on February 9, 2005, Plaintiff began to complain of cervical and lower back pain, as well as pain radiating into her legs. A magnetic resonance imaging (MRI) study done February 28, 2005, showed straightening of the normal lordotic curve in the cervical area, with mild disk bulges. In the lumbar area, the MRI showed a small annular[8] tear at the L5-S1 level with minimal central disk protrusion.

Plaintiff's medical records from February 2005 forward show that although she did not want or have surgery (at least up to the time the medical record ends), she did agree to a number of invasive treatment and diagnostic procedures. The course of treatment also shows that while she received some temporary relief from her symptoms after certain treatments, her condition later regressed. On September 12, 2005, she received a steroid injection into the SI joint and adjoining ligaments on the right and left sides. (Tr. 211.) On October 4, 2005, doctors performed a right L4 medial branch block over the right L5 transverse process to block the L4 nerve. (Tr. 209.) Although the results were good,

---

[6] The question whether she could perform a full range of light work prior to the fall is much closer. Because the case is being remanded to obtain additional medical opinion, her credibility and RFC for this period should also be reassessed.

[7] Pain has long been considered a nonexertional impairment in the Eighth Circuit. E.g., *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006); *Haley v. Massanari*; 258 F.3d 742, 747 (8th Cir. 2001); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991); *Prince v. Bowen*, 894 F.2d 283, 287 (8th Cir. 1990).

[8] The annulus is the strong outer ring of fibers in a spinal disk. It helps keep the nucleus pulposus intact. Stedman's Medical Dictionary 549 (28th ed. 2006).

Plaintiff continued to have pain and on October 18, 2005, she underwent a right L4-L5 medial branch radiofrequency nerve ablation[9] over her right L5 transverse process and sacral ala.[10] (Tr. 239.)  She continued to complain of pain and on November 11, 2005, was given a trigger point injection of steroids.  (Tr. 246.)  These gave initial relief, but by February 2006, her pain had returned, and on February 14, 2006, doctors re-injected her SI joint (Tr. 252), which brought no relief.  At this time she was complaining of lower back pain and pain radiating down the back of her leg.  (Tr. 254.)  On March 27, 2006, a right L5-S1 transforaminal epidural injection was done. (Tr. 256.)  At that point, doctors planned to do more extensive radiofrequency nerve ablations, but apparently this procedure was not approved by the insurance carrier.  They also recommended that she see Dr. Reza Shahim for possible surgery because of the annular tear at L5-S1.  She was taking muscle relaxers and narcotic pain medications. (Tr. 261-262.)  Her symptoms were worsening in May and on June 7, 2006, an MRI showed L5-S1 with disc dessication and a small posterior annular tear with a very mild posterior annular bulge present.  There was no visible compression of adjacent neural structures.  (Tr. 264.)  On June 19, Dr. Shahim reported that Plaintiff had not responded well to treatment and recommended a discography, but she did not want surgery at that point. (Tr. 265.)  Dr. Shahim saw Plaintiff again on August 14, 2006, reporting that her symptoms were "tolerable," so they would wait on further treatment. (Tr. 267.)  By November 2006, Plaintiff was still having problems and Dr. Shahim referred her for a discography and possible nucleoplasty.   He also

---

[9] A process where the nerve is heated to temporarily deactivate it and interrupt the pain signal.  www.spina-forum.com.

[10] Ala are the "wings" of the sacrum.  www.back.com/anatomy-sacral.html.

recommended a TENS[11] unit for treatment of muscle spasms. (Tr. 268.) On December 12, 2006, doctors performed a Provocative Lumbar Discography, which revealed that the source of her problem was at the L5-S1 level of the lumbar spine. (Tr. 269-70.) The report noted that she "is keen on proceeding." (Id.) This is a procedure which has to be done under conscious sedation. Precision injections of contrast dye are made at different levels to see if the chemical and pressure stimulus will reproduce the patient's pain. This procedure can confirm a specific disc as the source of pain.[12] Plaintiff was injected at the L3-L4, L4-L5 and L5-S1 levels. When she was injected at L5-S1, "the patient voiced 9/10 concordant low back pain extending into her lower extremities bilaterally, right leg greater than the left. She clearly indicated this was her normal day to day pain." (Tr. 270.) The doctors considered that the procedure was positive at L5-S1 and stated that adjacent levels served as excellent controls. (Id.) The procedure was done in hopes that doctors would be able to offer her more advanced treatment such as Intradiscal Electrothermal Therapy (IDET) or intrabody fusion versus artificial disk replacement. (Tr. 269.)

The medical record ends at this point as Plaintiff's hearing before the ALJ was held sixteen days later, and no reports regarding Plaintiff's back condition were submitted post-hearing.

Plaintiff was willing to subject herself to a number of injections and invasive diagnostic tests. The injections and particularly the Provocative Lumbar Discography undoubtedly involved a degree of risk and pain. This is a strong indication her pain was at a level that would more than minimally affect her ability to perform the full range of even sedentary work after her fall. While the ALJ mentioned the treatments, he did not seem

---

[11] Transcutaneous Electrical Nerve Stimulator.

[12] *See*, www.spineuniverse.com.

to take them into account in his analysis. Instead, he relied on certain specific statements from the medical reports to discount Plaintiff's complaints of pain. For example, he mentioned doctors' statements that her condition was improved and that she was told to stop wearing her back brace. The ALJ correctly quoted from the record, but the record also shows that her condition deteriorated in the months following those reports, to the point that doctors felt the discography was justified.

Further, it is clear from the course of treatment that the doctors all considered her complaints of pain to be genuine and there is no hint in the record that any treating doctor felt she was malingering. The overall record establishes that Plaintiff's pain was significant.

The ALJ found that Plaintiff could perform the full range of sedentary work and relied solely on the Medical Vocational Guidelines, which he found to direct a determination of not disabled. He also found she could sit for at least six hours in an eight-hour workday. It follows that he considered her pain to be so slight that it did not diminish her ability to perform at that level. Given the medical record, this conclusion is not supported by substantial evidence.

### RFC Determination

RFC is defined as "the most [the claimant] can still do" in a work setting "on a regular and continuing basis" despite her physical or mental limitations. 20 C.F.R. § 416.945(a)(1), (b) & (c). The ALJ bears the final responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007); 20 C.F.R. §§ 416.927(e)(2), 416.945(a)(3).

The ALJ found that before Plaintiff's fall, she could stand and/or walk at least six hours in an eight-hour workday and that after her fall, she could sit at least six hours in an

8

eight-hour workday. Nowhere in the record has any treating or examining physician rendered an opinion as to how Plaintiff's impairments affect her abilities to perform the various activities required by substantial gainful employment. In fact, the only medical assessment of RFC was done by a non-examining agency physician on January 27, 2005, prior to Plaintiff's fall. The Eighth Circuit has held, in *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000) that the mere opinion of a non-treating, non-examining doctor is not sufficient evidence to support an RFC finding. While the Eighth Circuit seems to have backed off the position that a specific evaluation is necessary where the medical and other evidence in the record provides a basis for a specific finding, that is not the case here. Plaintiff's conditions are complex. Neither the ALJ nor the Court is qualified to look at the treatment records here and determine how Plaintiff's condition affects her ability to perform work activities at the substantial gainful level. Specifically, we are not qualified to determine that she could stand at least six hours before the fall and sit at least six hours after, and the Court can find no substantial basis in the record for these findings. In this case, her physical capabilities must be evaluated by a treating or examining physician.

The ALJ points to the fact that no examining or treating physician has ever advised Plaintiff that she is precluded from work or has advised her to limit her activities. The mere fact that no physician has done so does not amount to substantial evidence that she is able to engage in substantial gainful employment. *See, Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001) (lack of opinion from physician, when not asked for one, did not constitute substantial evidence supporting ALJ's findings).

## Conclusion

This case will be remanded. On remand, the ALJ must obtain opinions from examining or treating physicians on how her impairments could be expected to affect her

9

abilities to perform work related activities. That is, he must obtain RFC assessments from such physicians. He must then re-evaluate her credibility and make his findings as to RFC. He should take into account her pain as a non-exertional impairment and obtain the opinion of a Vocational Expert to determine whether there are jobs that Plaintiff could perform despite her impairments in accordance with the regulations.[13]

IT IS THEREFORE ORDERED that the final decision of the Commissioner is reversed and remanded for action consistent with this opinion. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan,* 501 U.S. 89 (1991).

DATED this 11th day of February, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

---

[13] Generally, if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize testimony of a vocational expert. *Draper v. Barnhard,* 425 F.3d 1127 (8th Cir. 2005), *Groeper v. Sullivan*, 932 F.2d 1234, 1235 n. 1 (8th Cir. 1991). In those instances, the ALJ cannot rely exclusively on the guidelines to direct a conclusion of whether claimant is "disabled" or "not disabled." *Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir. 1988). Instead, testimony of a vocational expert must be taken.